UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| ANTHONY VOLPE, RICHARD HYLINSKI and CAROL HYLINSKI, <br><br> Plaintiff, <br> v. <br><br> CONNECTICUT DEPARTMENT OF MENTAL HEALTH AND ADDICTION SERVICES ("DMHAS"), <br><br> Defendants. | 3:13 - CV- 1796 (CSH) <br><br><br> JANUARY 30, 2015 |

**RULING ON MOTION TO DISMISS**

**HAIGHT, Senior District Judge:**

**I.    INTRODUCTION**

Plaintiffs in this civil rights action are members of a group of professional state employees. They are dissatisfied with their compensation, and sue their employer, a state entity, for violation of Title VII of the Civil Right of 1964 and common law intentional infliction of emotional distress.

The Plaintiffs, all pharmacists at the Defendant, Connecticut Department of Mental Health and Addiction Services (hereinafter "DMHAS"), claim discriminatory hiring practices and disparate treatment based on their lower rate of pay as a group to another group of similarly situated pharmacists at the University of Connecticut Health Center. Compl. ¶¶ 10-12. Plaintiffs allege that Defendant retaliated against them by failing to address their concerns when they complained of the ongoing and retroactive pay disparity to various authorities. Compl. ¶¶ 13-17. The Complaint also alleges that Defendant's discriminatory and retaliatory conduct constitute intentional infliction of

emotion distress. Compl., Court II ¶ 18.

Defendant moves to dismiss the Title VII claims (Count I), pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can be granted, and to dismiss the common law intentional infliction of emotion distress claim (Count II), pursuant to Fed. R. Civ. P. 12(b)(1), for lack of subject matter jurisdiction [Doc. 13]. Defendant argues that Plaintiffs' Title VII claims should be dismissed because they failed to allege 1) membership in any of the protected classes and 2) conduct that would be considered retaliatory under the statute, and 3) their intentional infliction of emotion distress claims are barred by the Eleventh Amendment and the doctrine of sovereign immunity.

Plaintiffs resist Defendant's motion. This Ruling resolves it.

**II.    FACTS**

The three plaintiffs, Anthony Volpe, Richard and Carol Hylinski, are all Registered Pharmacists, employed by Defendant DMHAS. Compl. ¶¶ 7-9. Plaintiff Anthony Volpe began his tenure at DMHAS in 2004. He is currently the Pharmacy Supervisor, paid at $42.96 per hour. *Id.* Plaintiffs Richard and Carol Hylinski became employed by DMHAS in 2011 and 2012, respectively. They are both Staff Pharmacists, paid at $33.55 per hour. *Id.* Plaintiffs claim that their rate of pay as a group is significantly lower than another group of similarly situated pharmacists at the University of Connecticut Health Center (hereinafter "UCONN"), resulting in pay disparity totaling $249,500.00, as of the date of the filing of the Compliant on December 3, 2013. Compl. ¶ 11. Plaintiffs assert that pharmacists are the only professional group subjected to pay disparity at DMHAS: nurses, physicians, occupational therapists and physical therapists have substantially the same pay as their counterparts at UCONN. Compl. ¶ 16.

Plaintiffs also allege that DMHAS starts new pharmacists at arbitrary Step rates, without regard to prior work experience, credentials or compensation, which further contributes to the pay disparity and is against the customary practice. Compl. ¶ 10. Specifically, Plaintiffs were hired at Step 1, which is substantially lower than the previous employer salary data provided to Defendant's Human Resources department. *Id.* This is in contrast to prior practice, where other pharmacists previously employed by Defendant were hired at Steps corresponding to their past employer pay scale, e.g., two were hired at Step 6 in 2007. *Id.*

Over the years, Plaintiffs have made numerous written complaints about the pay disparity to no avail to various individuals and offices at DMHAS, the Office of Labor Relations at Connecticut Office of Policy and Management, other state agencies, District 1199 (Plaintiffs' Union), Connecticut State Representative Paul Davis, and former Connecticut Attorney General (hereinafter "AG") Richard Blumenthal. Compl. ¶ 13. Plaintiffs allege that "[a]s a direct result of Plaintiffs' complaints of pay disparity, Defendant has retaliated against Plaintiffs by taking a consistently hostile position about Plaintiffs' complaints ... Defendant is determined to keep Plaintiffs in their inferior pay status ... without compelling, necessary or legitimate business reason.." Compl. ¶¶ 14, 15. Plaintiffs also allege that "despite having multiple opportunities to correct ... through the collective bargaining process or by stipulated agreement," Defendant intentionally maintained the pay disparity, which keeps worsening over time. Compl. ¶ 17.

On September 10, 2013, Plaintiffs, along with eleven other similarly situated individuals, filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging the pay disparity was based on disparate treatment and retaliation by DMHAS, thereby violating Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, *et seq.*,

and the Civil Rights Act of 1991, U.S.C. 1981a, *et seq*.  Compl. ¶ 4.  On September 11, 2013, the EEOC dismissed Plaintiffs' Charge of Discrimination and issued a Dismissal and Notice of Suit Rights, granting Plaintiffs ninety (90) days to file suit.  Compl. ¶ 5.  Plaintiffs timely filed the present Complaint against DMHAS in this Court.  Compl. ¶ 6.  Defendant now moves, in lieu of an answer, to dismiss the Complaint under Fed. R. Civ. P. 12(b)(6) and (1).

### III.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).  When a pleading is insufficient, the case may be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction "when the district court lacks the statutory or constitutional power to adjudicate it," or under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  Fed R. Civ. P. 12(b)(1), 12(b)(6); *Marakova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); *Gibson v. State of Conn., Judicial Dep't, Court Support Servs. Div.*, No. 3:05–CV–1396, 2006 WL 1438486, at *1 (D. Conn. May 23, 2006).  On a 12(b)(1) motion to dismiss, the plaintiff has the burden of proof by a preponderance of the evidence that subject matter jurisdiction exists. *Makarova*, 201 F.3d at 113; *Gibson*, 2006 WL 1438486, at *1.

"[T]he standards for dismissal under Rules 12(b)(1) and 12(b)(6) are substantially identical." *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003); *Dragon v. Conn.*, No. 3:14–CV–0749, 2014 WL 6633070, at *1, (D. Conn. Nov. 21, 2014).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Dragon*, 2014 WL 6633070, at *1.  Although a complaint "does not need detailed factual allegations,

it "requires more than labels and conclusions," or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.  A complaint does not suffice "if it tenders naked factual assertions devoid of further factual development." *Ashcroft*, 556 U.S. at 678.

When deciding a motion to dismiss under either subsection of Fed. R. Civ. P. 12(b), the Court must "accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 110-11 (2d Cir. 2010); *Rescuecom Corp. v. Google, Inc.*, 562 F.3d 123, 127 (2d Cir. 2009); *Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001).  Under Fed. R. Civ. P. 12(b)(6), the Court may consider only "the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).  In contrast, under Fed. R. Civ. P. 12(b)(1), where the existence of subject matter jurisdiction turns on a factual issue, the court is permitted to look beyond the complaint itself and may consider evidence outside the pleadings. *See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 108 (2d Cir. 1997); *Gibson*, 2006 WL 1438486, at *2.

**IV.   DISCUSSION**

**Count I: Title VII**

**A.** *Discrimination*

Title VII of the Civil Right Act of 1964 makes it unlawful "for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C.

§ 2000e-2(a)(1). To evaluate Plaintiff's Title VII claims, courts employ the now-familiar three-step, burden-shifting process articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The Title VII plaintiff bears "the initial burden of proving by a preponderance of the evidence a prima facie case of discrimination." *Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 251 (2d Cir. 2014) (citing *McDonnell*, 411 U.S. at 802–04); *Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 128 (2d Cir. 2012). While the burden is not onerous, in fact described as "minimal," the plaintiff must nevertheless demonstrate that he or she 1) is a member of a protected class; 2) was qualified for the position in question; 3) suffered an adverse employment action; and 4) the action occurred under circumstances giving rise to an inference of discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993); *Abrams*, 764 F.3d at 251-52 (2d Cir. 2014).

Defendant argues that Plaintiffs have failed to state a cause of action under Title VII because they have failed to allege membership in a protected class. This Court agrees. The plain language of Title VII shows that it *only* protects against employment discrimination "because of ... race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Where the statute's language is "plain, the sole function of the courts is to enforce it according to its terms." *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989); *United States v. Kozeny*, 541 F.3d 166, 171 (2d Cir. 2008).

Case law supports this interpretation. While holding that sex discrimination consisting of same-sex sexual harassment is actionable under Title VII in *Oncale v. Sundowner Offshore Services, Inc.,* 523 U.S. 75 (1998), the Supreme Court stressed the necessity of the prohibited discrimination having nexus to a protected class by repeatedly emphasizing that actionable harassment must have occurred "because of ... sex," as opposed to "ordinary socializing in the workplace." *Id.* at 81. Justice Thomas, in his single sentence concurrence, said that "the plaintiff must plead and ultimately

6

prove Title VII's statutory requirement that there be discrimination 'because of ... sex.'" *Id.* at 82. *See also Raum v. Laidlaw, Ltd.*, No. 97–CV–111, 1998 WL 357325, at *2 (N.D.N.Y. July 1, 1998) (court dismissed the case pursuant to Rule 12(b)(6) when Plaintiff failed to allege 1) membership in a protected class, 2) discrimination "*because* of his sex" or 3) even that the Defendant's conduct had sexual connotations (emphasis in the original). "Conduct that some people of either gender may considered to be rude or vulgar" is not actionable under Title VII.).

Courts have interpreted membership in the protected classes narrowly and strictly textual. Status in groups outside of one of the named protected classes, such as convicted felons, does not confer a right of action under Title VII. *Deprima v. N.Y.C. Dep't of Educ.*, No. 12–CV–3626, 2014 WL 1159856, at *11 (E.D.N.Y. Jan. 15, 2014); *Dingle v. Bimbo Bakeries USA/Entenman's*, No. 11–CV–02879, 2014 WL 949967, at *2 (E.D.N.Y. Mar. 11, 2014); *Gillum v. Nassau Downs Reg'l Off Track Betting Corp. of Nassau*, 357 F. Supp. 2d 564, 569 (E.D.N.Y. 2005); *Robinson v. Fleetboston Fin.*, No. 01–CV–0103, 2005 WL 2387839, at *9 (N.D.N.Y. Sept. 28, 2005). Even characteristics that are arguably related to the protected classes, such as sexual orientation, are excluded from the scope of Title VII. *Tyrrell v. Seaford Union Free Sch. Dist.*, 792 F. Supp. 2d 601, 622 (E.D.N.Y. 2011); *Parrella v. Lawrence & Mem'l Hosp.*, No. 08–CV–1445, 2009 WL 1279290, at *2-3 (D. Conn. May 5, 2009) ("[T]he Second Circuit has concluded that Title VII does not prohibit harassment or discrimination because of sexual orientation," citing *Simonton v. Runyon*, 232 F.3d 33, 35 (2d Cir. 2000) (internal quotations omitted)).

When Plaintiff does not allege membership in a protected class, Courts may look to the facts

for indication of such membership, especially if Plaintiff is *pro se*.[1] Even if the Court extends the leniency toward *pro se* plaintiffs to Plaintiffs in the present case, who are represented by counsel, the Complaint still fails to provide any indication of their membership in a protected class or disparate treatment based on their membership within. Plaintiff Carol Hylinski's status as a female, which gives her membership in a protected class, is defeated by the heterogeneity of her co-Plaintiffs, Anthony Volpe and Richard Hylinski's, who are males.

Instead of alleging membership in one of the named protected classes, Plaintiffs based their claim of Title VII employment discrimination on the difference in pay as a group to a "another group of similarly situated pharmacists at the University of Connecticut Health Center." Compl. ¶ 4. A dissatisfied, even an unfairly treated, group of employees does not constitute a protected class under Title VII, unless the unfairness is ascribable to one of the specifically enumerated causes of discrimination. Moreover, the University of Connecticut Health Center is not only a different employer, but it is a different employer under a different system (state-owned vs. academic center) and different collective bargaining agreement [Doc. 13-1, p.6]. Plaintiffs' comparison between themselves and the UCONN group, while no doubt sincerely presented, does not suffice to allege a *prima facie* case of discrimination under Title VII.

---

[1] In *Anderson v. N.Y.C. Dep't of Corrections*, for example, Court assumed *pro se* Plaintiff Anderson "is a female and, therefore, a member of a protected class[,]" when she failed to allege membership in a protected class by not checking any box indicating "race, gender, sex, national origin, ... color, or religion" on the standard form complaint. No. 12–CV–4064, 2013 WL 5229790, at *4 (S.D.N.Y. Sept. 17, 2013). Similarly in *Connell v. City of N.Y.*, when the *pro se* Plaintiff did not check any box on the standard form complaint, Judge Scheindlin ruled that Plaintiff failed to allege membership in a protected class after looking into his narrative and determined that the facts did not support reverse discrimination from his status as a white male. No. 00–CV–6306, 2002 WL 22033, at *3 (S.D.N.Y. Jan. 8, 2002).

**B.** *Retaliation*

Plaintiffs also allege retaliation under Title VII after they made complaints of pay disparity to various individuals and offices at the Defendant, Plaintiff's Union District 1199, EEOC, and other state authorities.[2]  Compl. ¶¶ 4, 13-14.  Plaintiffs noted "[a]s a direct result of Plaintiffs' complaints of pay disparity, Defendant has retaliated against Plaintiffs by taking a consistently hostile position about Plaintiffs complaints[;] ... motivated by discriminatory intent[,] Defendant is determined to keep Plaintiffs in their inferior pay status."  Compl. ¶ 14.

Title VII, 42 U.S.C. § 2000e-3(a) provides that:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... to discriminate against any individual ... because he has opposed any practice made an unlawful employment practice ..., or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing ....

Retaliation claims under Title VII are also analyzed under the *McDonnell Douglas* burden-shifting framework.  To establish a *prima facie* case of retaliation under Title VII, a plaintiff must show 1) that he participated in a protected activity, 2) that he suffered an adverse employment action, and 3) that there was a causal connection between his engaging in the protected activity and the adverse employment action.  *Rosioreanu v. City of N.Y.*, 526 F. App'x. 118, 120 (2d Cir. 2013); *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010); *Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 205-06 (2d Cir. 2006); *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998).  "To prove that he engaged in a protected activity, the plaintiff need not establish that the conduct he opposed was in fact a violation of Title VII ... [but]

---

[2]Other state authorities include Connecticut Office of Labor Relations within the Connecticut Office of Policy and Management, Connecticut State Representative Paul Davis and former Connecticut Attorney General Richard Blumenthal.  Compl. ¶ 13.

9

must demonstrate a good faith, reasonable belief that the underlying challenged actions of the employer violated the law." *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F. 2d 590, 593 (2d Cir. 1988); *Consolmagno v. Hosp. of St. Raphael Sch. of Nurse Anesthesia*, No. 3:11-CV-109, 2014 WL 7270191, at *11 (D. Conn. Dec. 18, 2014). "The reasonableness of the plaintiff's belief is to be assessed in light of the totality of the circumstances." *Galdieri–Ambrosini*, 136 F.3d at 292; *Consolmagno*, 2014 WL 7270191, at *11.

Defendant argues that Plaintiffs' belief in their cause of action under Title VII is "neither in good faith nor reasonable in light of the fact that Title VII protects individuals based on race, color, religion, sex and national origin" and Plaintiffs' comparators are similarly situated pharmacists at a different employer. Doc. 13-1, p. 6. Defendant's condemnation is justified. Plaintiffs filed this action without regard to Title VII's clear statutory language and judicial precedent, which limits Title VII suits to employment discrimination based on membership in a protected class. Even setting this aside, Plaintiff's comparison of their group with that of a group at an academic hospital that is part of an University system under a different collective bargaining agreement belies the claim that the individuals in question are "similarly situated."

The Second Circuit has held repeatedly that "implicit in the requirement that the employer was aware of the protected activity is the requirement that the employer understood, or could have reasonably understood, that the plaintiff's complaints, constituting the protected activity, were based on conduct prohibited by Title VII." *Rosioreanu*, 526 F. App'x. at 120 (internal quotations omitted) (quoting *Galdieri-Ambrosini*, 136 F.3d at 292). In *Galdieri-Ambrosini*, Judge Kearse upheld the District Court's grant of motion for judgment as a mater of law because the female plaintiff's complaints "did not state that [she] viewed [a male supervisor's] actions as based on her gender, and

there was nothing in her protests that could reasonably have led [her employer] to understand that was the nature of her objections." 136 F.3d at 292. Likewise in *Rosioreanu*, the Second Circuit held *en banc*:

> Here, as in *Galdieri-Ambrosini*, no evidence presented at trial permitted a jury reasonably to infer that the City had notice (or should have had notice) that Rosioreanu believed that the conduct of which she complained was based on her sex. As the District Court noted, Rosioreanu had not "explicitly refer [red] to gender" or sex discrimination in those complaints, nor was any "quintessentially gender-based conduct" involved. Put another way, Rosioreanu's complaints could easily have described a conflict between co-workers of any sex—regardless of the presence or absence of discriminatory animus—and, in these circumstances, we cannot agree with the District Court that the jury could infer that Rosioreanu's complaints related to sex discrimination as a matter of "credibility."

526 F. App'x. at 120 (internal citation omitted).

The same reasoning applies here. As Defendant noted, Plaintiffs do not allege that their EEOC claim is based on a Title VII protected class of race, color, religion, sex or national origin. Doc 13-1, p.5. In fact, this is true for all the complaints Plaintiff made over the years: their claim of discriminatory treatment hinges on the difference in pay between them and pharmacists at UCONN, rather than between members of a protect class and those outside. Such a comparison is not cognizable under Title VII, and the Plaintiffs' complaints would not have reasonably led DMHAS to understand that the pay disparity is in violation of Title VII.

Having failed to demonstrate participation in a protected activity, the first prong of the *prima facie* case, the Court may dismiss Plaintiffs' retaliation claim. Plaintiffs' claim, however, also fails on the second prong of demonstrating adverse employment action. Plaintiffs alleges in the Complaint that Defendant retaliated against Plaintiffs by "taking a consistently hostile position about Plaintiffs complaints" and "Defendant has had multiple opportunities to correct the pay disparity

between the pharmacist groups ... but has intentionally chosen to maintain such pay disparity." Compl. ¶ 14, 17. Plaintiffs further clarify these allegations in their opposing memorandum to Defendant's Motion to Dismiss [Doc. 20, p. 4]:

> Defendant took materially adverse action against Plaintiffs because its various responses to Plaintiff Anthony Volpe's complaints have ranged from 1.) Defendant completely ignoring Plaintiffs legitimate complaints of pay disparity to; 2.) Defendant unreasonably delaying any commitment to address Plaintiff's complaints to; 3.) Defendant taking very limited and inadequate measures to address Plaintiff"s complaints to; 4.) Defendant exhibiting outright hostility toward Plaintiffs for making such complaints.

Plaintiffs' allegations, however, suggest to the Court that Defendant has merely maintained the difference in pay for which Plaintiffs alleged as discrimination. There is no employment action that resulted from their complaints, adverse or not.

"A retaliatory action must affect the terms, privileges, duration or conditions of plaintiff's employment." *Fox v. State Univ. of N.Y.*, 686 F. Supp. 2d 225, 231 (E.D.N.Y. 2010) (citing *Pilgrim v. McGraw–Hill Companies, Inc.*, 599 F. Supp. 2d 462, 478 (S.D.N.Y. 2009)). "An adverse employment action is a materially adverse change in the terms and conditions of employment[.]" *Mody v. Gen. Elec. Co.*, No. Civ.A.3–04–CV–358, 2006 WL 1168051 at *7 (D. Conn. Apr. 26, 2006). Failure to act or investigate a complaint, therefore, does not constitute adverse employment action of a retaliatory nature. *See Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 721 (2d Cir. 2010) (The Second Circuit affirmed Southern District of New York's conclusion that an employer's failure to investigate an discrimination complaint "cannot be considered an adverse employment action taken in retaliation."); *Milne v. Navigant Consulting*, No. 08–CV–8964, 2010 WL 4456853, at *7-8 (S.D.N.Y. Oct. 27, 2010) (ruled that lack of thorough investigation cannot be considered an adverse employment action, "because [it] cannot be viewed as a threat of future harm

or a deterrent to making or filing a complaint."); *Fox*, 686 F. Supp. 2d at 231 ("[E]ven if the defendants did fail to investigate the plaintiff's complaint, it was not a retaliatory action.").

Because Plaintiffs have failed to make a *prima facie* showing of any retaliatory conduct by DMHAS against their complaints, and thus failed to state a cause of action for retaliation under Title VII, this claim must be dismissed pursuant to Rule 12(b)(6).

**Count II: Intentional Infliction of Emotional Distress**

In Court II of the Complaint, Plaintiffs allege a cause of action under common law claim of intentional infliction of emotional distress against DMHAS.  This claim is barred by the Eleventh Amendment and the doctrine of sovereign immunity, because DMHAS is an agency of the State of Connecticut.  *See* Conn. Gen. Stat. § 17a-450 and Compl. ¶ 3.

The Eleventh Amendment of the United States Constitution provides "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  In other words, as a default, states have immunity against suits in federal court under the Eleventh Amendment. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984);  *Gibson*, 2006 WL 1438486, at *2. "A state may be subject to suit in federal court one of two ways (1) Congress can divest a state of immunity through statutory enactment, as it has done with Title VII; or (2) a state may waive its immunity and agree to be sued in federal court." *Sanchez v. Univ. of Conn. Health Care Ctr.*, 292 F. Supp. 2d 285, 392 (D. Conn. 2003).  "In order to be subject to suit in federal court, a state must expressly and unambiguously waive its Eleventh Amendment immunity or Congress must clearly express its intention to revoke the immunity in language of a particular statute." *Martinez v. Conn. S. Library*, 817 F. Supp. 2d 28, 41 (D. Conn.

2011). There is neither such divestment from Congress, since intentional infliction of emotional distress is a common law claim, nor has Connecticut expressly waived its sovereignty immunity. *See id.* Plaintiffs has not made any argument that Connecticut has consented to suit or passed any statute that abrogated its Eleventh Amendment sovereignty immunity with regards to this cause of action. As a result, Plaintiffs' claim of intentional infliction of emotional distress must be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction, because this Court lacks the power to adjudicate it. *See Gibson*, 2006 WL 1438486, at *1.

## V.     CONCLUSION

For the foregoing reasons, reasons stated herein, Defendant's Motion to Dismiss the Complaint [Doc. 13] is GRANTED.

The Clerk of the Court is directed to dismiss the Complaint WITHOUT PREJUDICE to Plaintiffs' right, if such there be, to assert their claims against the Defendant in a State court of competent jurisdiction.

Upon dismissal of the Complaint, the Clerk is directed to close the case.

It is SO ORDERED.

Dated:  New Haven, Connecticut
            January 30, 2015

                                /s/Charles S. Haight, Jr.
                                CHARLES S. HAIGHT, JR.
                                Senior United States District Judge